# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ARKEYO, LLC,

        Plaintiff,

        v.

SAGGEZZA, INC.,

        Defendant.

No. 19-cv-08112
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Arkeyo, LLC (Arkeyo) creates software that interacts with coin counting machines located in banks and retail locations. Arkeyo has filed suit against Saggezza, Inc. (Saggezza), alleging Saggezza misappropriated Arkeyo's trade secrets and infringed Arkeyo's copyrights in Arkeyo's proprietary software. R. 1, Compl.[1] Saggezza moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(6). R 11, Mot. Dismiss at 3. For the reasons that follow, the Court denies Saggezza's Rule 12(b)(7) motion and denies its Rule 12(b)(6) motion.

## Background

Arkeyo created a coin counting system for Republic First Bank (Republic), Metro Bank PLC (Metro), and Metro US. Compl. ¶ 9.[2] This system consisted of a Cummins-Allison Corp. (Cummins) "small footprint bin" counting machine and

---

[1]Citations to the docket are indicated by "R." Followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Arkeyo. *See Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Arkeyo's software installed in the machine. *Id.* ¶ 10. It also included an Arkeyo-supplied computer, which connected to the machine and contained additional software Arkeyo created for communicating with the machine and two printers attached to the machine. *Id.* Arkeyo deployed the system at Metro US in 2009 and at Republic in 2010, where the machines were known as "Money Magic Machines." *Id.* ¶ 13. According to Arkeyo, there was a contract between Arkeyo and Metro that was effective as of April 20, 2010 (the Metro Agreement). *Id.* ¶ 12.

Arkeyo describes its relationship with Metro US and Republic as follows: Arkeyo would purchase the small footprint bin machines from Cummins, resell them to Metro US and Republic, and then license its software to Metro US and Republic. Compl. ¶ 14. Additionally, Arkeyo retained Cummins to perform maintenance and repairs on the small footprint bin machines but Arkeyo itself would maintain and repair other components of its system. *Id.* After Metro US was sold, Arkeyo ceased providing it services. *Id.* ¶ 15. In 2010, Arkeyo then began deploying its system for Metro locations in England, setting up a similar purchase, resale, license, and maintenance and repair relationship. *Id.* ¶¶ 16, 20.

Pursuant to the Metro Agreement, Metro agreed to pay Arkeyo service and license fees for all Cummins coin counting machines installed in Great Britain for a period of ten years. Compl. ¶ 18. The Metro Agreement prohibits Metro from making derivative works from, or reverse engineering any of the software Arkeyo licensed to Metro for the purpose of developing any other coin counting machines. *Id.* ¶ 19. From 2009 through 2016, Arkeyo developed successive versions of its software, and in 2014,

Arkeyo made its system available to Metro in conjunction with a new Cummins coin counting machine, the MM2 machine. *Id.* ¶ 21. As part of these processes, Arkeyo provided its software's source code, and the software in object code or "executable form" to Cummins. *Id.* To facilitate the development of the MM2 machine, Arkeyo also provided to Cummins computers storing or containing portions of Arkeyo's software. *Id.* ¶ 23. Effective October 3, 2017, Arkeyo obtained copyright registration certificate No. TXu 2-049-886 with respect to its software's source code. *Id.* ¶ 28.

From 2010 through 2016, both Arkeyo and Metro performed in accordance with the Metro Agreement, and Metro expressed its satisfaction with Arkeyo's performance. Compl. ¶ 31. In January 2016, Metro met with personnel from Saggezza and Cummins to discuss how to duplicate Arkeyo's software to enable Metro to replace Arkeyo with Saggezza, another software company, as Metro's software vendor. *Id.* ¶ 32. In March 2016, Saggezza asked Metro to provide Saggezza with one of the touch screen computers, loaded with Arkeyo's software. *Id.* ¶ 33. At some point in March 2016, Metro provided Saggezza a touchscreen computer with Arkeyo's software. *Id.* ¶ 35. On or about May 11, 2016, Metro terminated the Metro Agreement. *Id.* ¶ 44. On December 4, 2016, Metro confirmed that it considered that the Metro Agreement was terminated as of November 11, 2016, and that it no longer intended to pay Arkeyo for the use of its software. *Id.* ¶ 46.

Arkeyo subsequently filed a complaint against Saggezza asserting claims for misappropriation under the Defend Trade Secrets Act of 2016 (the DTSA) (Count I); conversion (Count II); tortious interference with contractual relations (Count III);

tortious interference with prospective contractual relations (Count IV); copyright infringement (Count V); and contributory copyright infringement (Count VI). Compl. Saggezza now moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). R. 10, Mot. Dismiss.

**Standard of Review**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Under Rule 12(b)(7), the movant seeks dismissal "based on the failure to join a necessary party as required by Federal Rule of Civil Procedure 19." *Ochs v. Hindman*, 984 F. Supp. 2d 903, 906 (N.D. Ill. 2013). The movant "bears the burden of demonstrating that the absent party is a necessary and indispensable party that

must be joined." *Id.* Even though the purpose of Rule 19 is to "permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources," dismissal is not the preferred outcome. *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 634 (7th Cir. 2009) (internal citations omitted).

The Court will address the motion to dismiss under Rule 12(b)(7) first and then Saggezza's 12(b)(6) motion.

## Analysis

### I. Request to Strike

Before turning to the merits of the motion, the Court first addresses Saggezza's request to strike. In its Reply, Saggezza asks the Court to strike Arkeyo's Response because it is 25 pages in length, in violation of the Northern District of Illinois Local Rule 7.1. R. 26, Reply at 2. Additionally, Saggezza points out that the Response lacks a table of contents or a table of authorities. *Id.*

Local Rule 7.1 limits the page number of a response brief to 15 pages. It cannot be disputed that not only is the Response over the page limit by ten pages, not an inconsiderate number of pages, but that Arkeyo failed to seek leave of Court to file a brief in excess of the page limitation.[3] The Court agrees with Saggezza that the Response violates Local Rule 7.1. Accordingly, the Court will only consider the Response up to and including page fifteen. The Court, having disposed of this preliminary matter, now turns to the motion itself.

---

[3]Arkeyo fails to use page numbers in its Response. As such, the Court cites to the CM/ECF page numbers for its Response.

## II. Motion to Dismiss Under Rule 12(b)(7)

The purpose of Rule 19 is to "permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1447 (7th Cir. 1990). Analysis of a whether a party is a necessary party proceeds in two steps under Rule19. *Askew,* 568 F.3d at 635. First, a court determines whether a party, subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction, must be joined as a party. *Id.* A party is necessary if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1). Second, if a court determines that the party is "necessary," Rule 19(a)(2) provides that the court must order that order that the person be made a party. *Askew*, 568 F.3d at 635 (citing FED. R. CIV. P. 19(a)(2)).

Saggezza moves to dismiss the complaint for Arkeyo's failure to join Metro as a necessary party to this lawsuit. R. 11, Memo. Dismiss at 5. Saggezza contends that the majority of the allegations in the complaint involve the alleged misconduct of Metro and Cummins. As an initial matter, Saggezza points out that Arkeyo had a contractual relationship with Metro, not Saggezza. *Id.* (citing Compl. ¶ 12). Next,

Saggezza notes that Metro provided a copy of Arkeyo's Software to Saggezza. *Id.* (citing Compl. ¶ 33). It was Metro personnel, according to Arkeyo, along with Saggezza and Cummins personnel, that met to discuss the duplication of the Metro Software to enable Metro to replace Arkeyo with Saggezza as Metro's software vendor. Compl. ¶ 32. Arkeyo's allegations of damages, notes Saggezza, revolve around Metro's alleged use of Arkeyo's software. Memo. Dismiss at 5. Therefore, concludes Saggezza, Metro is a necessary party and Arkeyo's failure to join Metro is prejudicial to Saggezza. *Id; see also* Reply at 5 (citing *Cognis Corp. v. Chemcentral Corp.*, 430 F. Supp. 2d 806, 809 (N.D. Ill. 2006)).

Arkeyo responds that Metro is not a necessary party because Metro is a joint tortfeasor with Saggezza with respect to Arkeyo's DTSA, conversion, and copyright infringement claims. R. 16, Resp. at 9. As a joint tortfeasor, asserts Arkeyo, Metro is not a required party that must be joined, citing *Salton, Inc. v. Philips Domestic Appliances and Pers. Care B.V.*, 391 F.3d 871, 880 (7th Cir. 2004); *Pasco Int'l (London) Ltd. v. Stenograph Corp.,* 637 F.2d 496, 503–05 (7th Cir. 1980); *XPO Logistic, Inc. v. Gallatin*, 2013 WL 3835358, at *3 (N.D. Ill. July 24, 2013); *TABFG, LLC v. Pfeil,* 2009 WL 1209019, at *3 (N.D. Ill. May 1, 2009). *Id.* at 8–9. As for Arkeyo's tortious interference claims, Arkeyo maintains that Metro is an absent party with whom Arkeyo is in contractual privity and, therefore, not a necessary party, citing *Salton, Inc.*, 391 F.3d at 880; *Pasco Int'l (London) Ltd.,* 637 F.2d at 503–05. *Id.*

It is plain, based on the allegations of the complaint, that Metro may be a joint tortfeasor with Saggezza with respect to Arkeyo's DTSA, conversion, and copyright

infringement claims. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Tempes v. Synthes*, 498 U.S. 5, 7 (1990). After all, under the principle of joint and several liability, "the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor." *Salton, Inc.*, 391 F.3d at 877. Therefore, a joint tortfeasor not joined in a lawsuit is not a person in whose absence complete relief cannot be accorded within the meaning of Rule 19 and therefore, is not an indispensable party to the action. *See Pasco Int'l (London) Ltd.,* 637 F.2d at 505. As the *Salton* court explained, if all joint tortfeasors automatically were required to be joined, "the rule that joint tortfeasors are not by virtue of their jointness indispensable parties . . . would be overthrown." 391 F.3d at 880.

Metro, as a joint tortfeasor, is not a necessary party with respect to Arkeyo's DTSA, conversion, and copyright infringement claims. Similarly, Metro is not a necessary party with respect to Arkeyo's tortious interference claims. Indeed, Saggezza does not advance any cogent argument on this point. Furthermore, Saggezza has failed to explain how Metro's absence will impair its ability to protect an interest, or that it will be exposed to a substantial risk of multiple or inconsistent obligations. *See* FED. R. CIV. P. 19(a)(1)(B). Therefore, Metro does not qualify as a necessary party or an indispensable party under Rule 19(a), and the Court denies Saggezza's Rule 12(b)(7) motion.

The Court, having dispensed with Saggezza's Rule 12(b)(7) motion, now turns to Saggezza's Rule 12(b)(6) motion to dismiss.

### III. Motion to Dismiss Under Rule 12(b)(6)

### A. Count I - DTSA Claim

In Count I, Arkeyo asserts a claim of trade secret misappropriation under Section 1829(5)(A) of the DTSA. Comp. ¶¶ 58–65. Saggezza maintains that Arkeyo fails to sufficiently plead a DTSA cause of action. Memo. Dismiss at 6–7. The Court agrees with Arkeyo that the claim is sufficiently pled.

To state a claim for misappropriation under the DTSA, a plaintiff must allege that "(1) there are trade secrets (2) that were misappropriated" by the defendant. *Molon Motor and Coil Corp. v. Nidec Motor Corp.*, 2017 WL 1954531, at *3 (N.D. Ill. May 11, 2017). Pursuant to the DTSA, a trade secret includes:

> [A]ll forms of technical . . . or engineering . . . information, including . . . codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically . . . , or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

Saggezza moves to dismiss Count I for failure to state a claim arguing that what Arkeyo alleges is a reverse engineering claim, which does not violate the DTSA because a reverse engineered secret is not "misappropriated." Memo. Dismiss at 6–7. Saggezza argues that pursuant to 18 U.S.C. § 1839(6)(B), the term "improper means" "does not include reverse engineering, independent derivation, or other lawful means

of acquisition." *Id.* at 7. For support, Saggezza relies on *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 762 (7th Cir. 2006), in which the Seventh Circuit held that there is no bar to reverse engineering a machine if it is not patented, and *Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952, 959 (7th Cir. 2006), in which the Seventh Circuit held that reverse engineering and independent discovery is a complete defense to claims of copyright infringement and trade secrets appropriation). *Id.*

The singular issue raised by Saggezza's motion to dismiss Count I is whether Arkeyo has pled "misappropriation." A "reverse engineering" claim, insists Saggezza, does not qualify as "misappropriation. Memo. Dismiss at 7. The Court finds Saggezza's reliance on *Automation by Design, Inc.* and *Confold Pac., Inc.* is misplaced for several reasons. First, *Automation by Design, Inc.* and *Confold Pac., Inc.* were both decided at the summary judgment stage, not on a Rule 12(b)(6) motion to dismiss. 463 F.3d at 751; 433 F.3d at 954. Second, and most importantly, neither case involved claims under the DTSA or misappropriation of trade secrets. Rather, the issue in *Automation by Design, Inc.* was whether the defendant infringed on the plaintiff's copyright and breached the license agreement between the parties when it hired a third party to duplicate an assembly machine that the plaintiff had designed and built for the defendant. 463 F.3d at 751. The court, turning to Indiana contract law to resolve the dispute, held that the agreement allowed the defendant the right to hire a third party to duplicate the plaintiff's machinery. *Id.* at 758.

Similarly, the issues in *Confold Pac., Inc.* were whether the defendant breached a non-disclosure agreement with the plaintiff by copying the plaintiff's design and whether the defendant unjustly enriched itself by exploiting the plaintiff's design. 433 F.3d at 954–57. The plaintiff contended that the defendant had designed a shipping container allegedly based on a design the plaintiff had submitted to the defendant in response to a request for proposals. *Id.* The court held that the contract did not afford the plaintiff its desired confidentiality rights. *Id.* at 956–57. It also held that the plaintiff's misappropriation claim was really a claim for infringement of a design that it did not patent, and, accordingly, was preempted by patent law. *Id.* at 960.

In short, the Court finds that Saggezza fails to advance any authority that Arkeyo's complaint fails to state a cause of action under the DTSA. Therefore, the Court denies Saggezza's motion to dismiss with respect to Count I.

## B. Preemption by the Copyright Act

In Count II, Arkeyo brings a conversion claim against Saggezza for one or more touchscreen computers with the Arkeyo's software installed. Compl. ¶¶ 66–70. In Counts V and VI, Arkeyo asserts a copyright infringement claim and a contributory copyright infringement claim against Saggezza. *Id.* ¶¶ 85–97. Saggezza argues that the Copyright Act preempts each of these claims. Memo. Dismiss at 12–13. The Court addresses each in turn.

Section 301 of the Copyright Act preempts all state and common law causes of action that provide for rights "equivalent to any of the exclusive rights within the

general scope of the copyright . . . ." *Cyber Websmith, Inc. v. Am. Dental Ass'n*, 2010 WL 3075726, at *2 (N.D. Ill. Aug. 4, 2010) (quoting 17 U.S.C. § 301(a)). Moreover, common law causes of action are generally preempted when they seek damages that are identical to those sought for copyright infringement. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 934 (7th Cir. 2003).

### 1. Count II - Conversion Claim

Saggezza argues that Count II is preempted because Arkeyo's conversion claim is based on Saggezza's alleged unauthorized use of its source code and depends on the rights set forth in 17 U.S.C. § 106. Memo. Dismiss at 13. For support, Saggezza relies on *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 502 (7th Cir. 2011), in which the Seventh Circuit held the conversion claim focused on the defendants' unauthorized publishing, not possession, of the protected work. Because publishing is a right under the Copyright Act, it preempted the conversion claim. It also relies on *Bucklew v. Hawkins*, 329 F.3d 923, 932–34 (7th Cir. 2003), in which the Seventh Circuit held that the Copyright Act's preemption clause forbade states to add sanctions for a wrongful act identical to a violation of the Copyright Act. *Id.*

The essence of Saggezza's argument is that a claim for conversion will not lie for intangible property. Saggezza is correct. "Illinois courts do not recognize an action for conversion of intangible rights." *Am. Nat'l Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008); *see also Bilut v. Nw. Univ.*, 692 N.E. 2d 1327, 1334–35 (Ill. Ct. App. 1998) (holding that under Illinois law, conversion requires actions involving physical property and that the Copyright Act did not preempt the plaintiff's

12

conversion claim where the plaintiff alleged theft of a physical paper copy of her research). True, that a conversion claim for Arkeyo's software may fail and be preempted because of the intangible nature of software. *See Meyer Tech. Sols., LLC v. Kaegem Corp.*, 2017 WL 4512918, at *3 (N.D. Ill. Oct. 10, 2017) (agreeing with the plaintiff that the defendant's counterclaim for conversion must be dismissed because software is intangible property and not amenable to conversion). In fact, in its Reply, Saggezza relies on *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001) for additional support (Reply at 8), but this case is distinguishable because it involved a misappropriation claim software, i.e., intangible property. Here, however, Arkeyo contends that its conversion claim is centered on the touchscreen computer, a tangible item, that Saggezza allegedly took. Compl. ¶ 67. The court's analysis in *AutoMed Techs., Inc.* does not aid the Court in resolving this case. Therefore, at this juncture, the Court cannot say that the claim is grounded on recoupment of intangible property, and accordingly the Copyright Act does not preempt Arkeyo's conversion claim. *See Onvi, Inc. v. Radius Project Dev., Inc.*, 2020 WL 4607242, at *8 (N.D. Ill. Aug. 11, 2020) (denying motion to dismiss conversion claim of CAD files).

### 2. Counts V & VI - Copyright Claims

Saggezza next argues that Counts V and VI (copyright claims) are preempted because they are premised on and depend on the rights set forth in 17 U.S.C. § 106. Memo. Dismiss at 13 (citing *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 957 (N.D. Ill. 2002) (holding that the claim for tortious interference with contractual relations was preempted where the claim was based on

copyrightable literary works (computer programs/software) and was not qualitatively different than the unauthorized copying)).

The Court finds that Counts V and VI are not preempted. Counts V and VI are federal copyright claims, which fall under the Copyright Act itself. *See First Comics, Inc. v. World Color Press, Inc.*, 672 F. Supp. 1064, 1066 (N.D. Ill. 1987) (noting that the Copyright Act does not preempt causes of action based on federal law). The only case cited by Saggezza, *Higher Gear Grp., Inc.,* is distinguishable as in that case the defendants only argued that the plaintiff's state law claims, including a tortious interference claim, were preempted. 223 F. Supp. 2d 953 at 956–57. Thus, Counts II, V, and VI are not preempted.

The Court, having determined that Counts II, V and VI are not preempted, now turns to Saggezza's Rule 12(b)(6) motion to dismiss based on pleading sufficiency.

### C. Count II - Conversion Claim

In Count II, Arkeyo asserts a common law conversion claim against Saggezza for one or more touchscreen computers with Arkeyo's software installed. Compl. ¶¶ 67–70.

Under Illinois law, to state a claim for conversion, a plaintiff must allege that: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Sys. Am., Inc. v. Providential Bancorp, Ltd.*, 2006 WL 463314, at *6 (N.D. Ill. Feb. 24, 2006).

First, Saggezza cites *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 773 (7th Cir. 2013) for the elements of a conversion claim (Memo. Dismiss at 7), but this case is inapplicable because it involved Wisconsin, not Illinois, law. Second, Saggezza summarily asserts that Arkeyo does not sufficiently allege each required element for conversion, but, in doing so, suggests a list of factors that do not align with the required elements for a conversion claim. Memo. Dismiss at 8. In short, Saggezza fails to advance any argument under Illinois law evincing how Arkeyo's conversion claim fails.

The Court finds that that Arkeyo has sufficiently pled the first two and the fourth elements of a conversion claim. Even though Arkeyo does not allege that it made a demand upon Saggezza, under Illinois law, "a demand is unnecessary to establish a conversion where another independent action of conversion is established." *Russell Dean, Inc. v. Maher*, 2018 WL 4679573, at *9 (N.D. Ill. Sept. 28, 2018) (internal quotations and citations omitted). In its complaint, separate from the conversion of the touchscreen computers, Arkeyo alleges that Saggezza also developed its own software based on Arkeyo's software, which was intended to replace it, and provided that back to Metro on the coin counting machines. Compl. ¶¶ 36–37, 41. Accordingly, Arkeyo need not allege a demand.

In its Reply, Saggezza challenges the status of the property at issue and its ownership. Reply at 7–8. But this attempt ignores the principle that the Court cannot resolve a factual dispute at the motion to dismiss stage and must construe the briefs and the complaint in Arkeyo's favor. *See McFarland-Lawson v. Ammon*, 847 Fed.

Appx. 350, 350 (7th Cir. 2021) (citing *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chi.*, 45 F.3d 1144, 1154 (7th Cir. 1995)).

As a result, the Court denies the motion with respect to Count II.

**D. Count III - Claim for Tortious Interference with Contractual Relations**

In Count III, Arkeyo brings a tortious interference with contractual relations claim against Saggezza. Compl. ¶¶ 71–77. Under Illinois law, to state a claim for tortious interference with a contract, a plaintiff must allege: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages." *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 741 (N.D. Ill. 2014).

Saggezza contends that Arkeyo cannot establish Saggezza acted with the specific intent of harming Arkeyo's contract with Cummins, or that Saggezza acted without privilege or justification. Memo. Dismiss at 9–10. Saggezza explains that Saggezza did not intend to harm any contractual relations but was hired to perform a task to reach a predetermined result. *Id.* at 10.

The Court first notes that Saggezza incorrectly construes Arkeyo's claim as interference with a Cummins contract, when instead, Arkeyo's allegations are premised on Saggezza's interference with Arkeyo's contract with Metro. Specifically, Arkeyo alleges: (1) the existence of a valid contract with Metro (Compl. ¶ 72); (2) Saggezza was aware of the contract (*id.*); (3) Saggezza took

16

purposeful action to interfere and caused the termination of Arkeyo's contract with Metro by assisting Metro in breaching the contract by enabling Metro to use the Replacement Application (*id.* ¶ 73); (4) Metro did breach the contract as a result of Saggezza's facilitation of the reverse engineering (*id.* ¶ 75); and (5) Arkeyo requests compensatory damages (*id.* ¶ 77). Thus, Arkeyo has sufficiently pled a claim for tortious interference with contractual relations, and the Court denies the motion with respect to Count III.

### E. Count IV - Claim for Tortious Interference with Prospective Contractual Relations

In Count IV, Arkeyo brings a tortious interference with prospective contractual relations claim against Saggezza. Compl. ¶ 79. The elements for tortious interference with prospective contractual relations are: (1) that the plaintiff had a reasonable expectation of entering into a valid business relationship, (2) that the defendant knew of this expectancy, (3) that the defendant purposefully interfered to prevent the expectancy from being fulfilled, and (4) that damages to the plaintiff resulted from the interference. *Cook*, 141 F.3d at 327.

Saggezza argues that Arkeyo cannot state such a claim, but its memorandum is devoid of any legal authority discussing this cause of action. Instead, Saggezza comingles its position with its arguments addressing Arkeyo's claim for tortious interference with contractual relations, and does not provide an independent basis for challenging this claim. Memo. Dismiss at 8–10. Saggezza does not address which element is missing from the complaint, and "[i]t is not the role of this court to research and construct the legal arguments open to parties, especially when they are

represented by counsel." *Vertex Refining, NV, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 374 F. Supp. 3d 754, 765 (N.D. Ill. 2019) (citing *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996), amended (Mar. 28, 1996)). Therefore, because Saggezza does not properly advance any arguments for dismissal of this claim, the Court denies Saggezza's motion to dismiss with respect to Count IV.

### F. Count V - Claim for Copyright Infringement

In Count V, Arkeyo asserts a copyright infringement claim against Saggezza. Compl. ¶¶ 85–90. The Court agrees with Arkeyo that the claim is sufficiently pled.

To state a cause of action for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Janky v. Lake Cnty. Convention and Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (internal citations omitted). "A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir.1994).

It is undisputed that Arkeyo's complaint satisfies the first prong of a copyright infringement claim as Arkeyo obtained copyright registration certificate No. TXu 2-049-886 with respect to the source code to Arkeyo's software. Compl. ¶ 28. Therefore, Arkeyo has established a presumption that the copyright is valid. *Wildlife Express Corp.*, 18 F.3d at 507. It is the second prong that is the subject of Saggezza's motion to dismiss. Saggezza contends that Arkeyo has failed to set forth any specific allegations that any portion of Arkeyo's source code was actually copied by Saggezza

and that Arkeyo should have to plead, with specificity, the specific code it claims was copied. Memo. Dismiss at 11–12. The Court disagrees. Arkeyo alleges that Saggezza "engaged in unauthorized copying, distribution and display of Arkeyo's software, and has created unauthorized derivative works from Arkeyo's software, both within the United States and abroad, in contravention of the United States Copyright Act." Compl. ¶ 86.

Additionally, Saggezza again attempts to engage in another factual dispute, suggesting that Arkeyo's source code is only similar in function to Saggezza's source code, and, as a result, Arkeyo cannot claim that the source code itself was copied. Memo. Dismiss at 11–12. But, again, the Court must look to the allegations in the complaint and not resolve factual disputes at this stage. *See McFarland-Lawson*, 847 Fed. Appx. at 350. Arkeyo's allegations are sufficient to state a valid copyright infringement claim. Therefore, the Court denies the motion to dismiss with respect to Count V.

### G. Count VI - Claim for Contributory Copyright Infringement

In Count VI, Arkeyo brings a contributory copyright infringement claim against Saggezza. Compl. ¶¶ 91–97. To state a valid claim for contributory copyright infringement, a plaintiff first must allege a valid direct copyright claim. *Denison v. Larkin*, 64 F. Supp. 3d 1127, 1135 (N.D. Ill. 2014). Then, "[l]iability for contributory infringement will be imposed when a defendant, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of

another." *Bell v. Chi. Cubs Baseball Club, LLC*, 2020 WL 550605, at \*4 (N.D. Ill. Feb. 4, 2020).

Saggezza again comingles its arguments attacking this claim with its statements arguing for dismissal of the copyright infringement claim. Memo. Dismiss at 10–12. It provides no independent basis for dismissing this claim, and the Court cannot construct Saggezza's legal argument for it. *See Vertex Refining, NV, LLC*, 374 F. Supp. 3d at 765. Accordingly, the Court denies the motion to dismiss with respect to Count VI.

## Conclusion

For the foregoing reasons, the Court denies Saggezza's motion to dismiss with respect to Rule 12(b)(7) and Rule 12(b)(6). The Court directs Saggezza to answer the complaint on or before 06/24/2021.

Dated: June 3, 2021

_____
United States District Judge
Franklin U. Valderrama